UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WANDA MOORE, MARYANN ROSSI,
and JUDY STENCLICK,

                Plaintiffs,

              -v-

WEBSTER CENTRAL SCHOOL DISTRICT,

                Defendant.
_____

DECISION AND ORDER
06-CV-6566 CJS

APPEARANCES

| | |
|---|---|
| For Plaintiffs: | Christina A. Agola, Esq.<br>Jason Little, Esq.<br>730 First Federal Plaza<br>28 East Main Street<br>Rochester, New York 14614 |
| For Defendant: | Michael P. McClaren, Esq.<br>Jeremy A. Colby, Esq.<br>Webster Szanyi LLP<br>1400 Liberty Building<br>Buffalo, New York 14202 |

INTRODUCTION

      This is an action alleging employment discrimination, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290, *et seq.*, as well as violations of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). Now before the Court is Defendant's "Motion to Dismiss/Strike Plaintiff's Amended Complaint" [#24] pursuant to Federal Rule of Civil Procedure ("FRCP") 12. For the reasons that follow, Defendant's motion is denied.

BACKGROUND

The following facts are taken from plaintiff's Amended Complaint [#23] in this action, unless otherwise noted. At all relevant times, plaintiffs Mary Ann Rossi ("Rossi") and Judy Stenclick ("Stenclick") were employed by the defendant school district as "Aides/Hall monitors." Further at all relevant times, plaintiff Wanda Moore ("Moore") was employed by the school district as a "Sentry." It is noteworthy that prior to 2005, the position of Sentry was held only by males. However, in May 2005 Moore was hired as the school district's first and only female Sentry, as part of a Settlement Agreement between Moore and the district in resolution of certain claims of sex-based discrimination. It is alleged that Sentries "perform[ed] essentially the same job" as Aides/Hall Monitors, but received a higher wage. (Amended Complaint ¶ 17).

Moore contends that after she was hired as a Sentry, she was subjected to retaliation stemming from her previous discrimination complaint. As evidence of such retaliation, Moore alleges that: 1) she was not given a master key to the building, a cell phone, or new equipment, while male Sentries were given those items;[1] 2) her male supervisor "decline[d] to deal with her directly," and stated that he had "a hard time dealing with women";[2] 3) she was denied overtime; and 4) she was excluded from job-related meetings and social events. Moore also indicates that she was paid less money than the male Sentries for performing the same work.

---

[1] Id. at ¶ 36.

[2] Id.

2

Moore also maintains that she was subjected to a sex-based hostile work environment. Specifically, she contends that around the time she was hired as a Sentry, defendant installed "a motion sensitive video camera . . . in the 'break room' shared by Sentries and Aids" to monitor her,[3] and that male Sentries repeatedly barred her from the lunch room.[4] She also alleges that she observed male Sentries excluding female Aide/Hall Monitors from the shared break room[5] and ignoring the Aide/Hall Monitors' radio calls for assistance.[6] Moore alleges that she complained about these events to her immediate supervisor, Bill Mandell ("Mandell"), but he did nothing. Further, she alleges that she complained to Mandell's supervisor, Mr. Cunningham, however, "the treatment by her male [S]entry colleagues did not change."[7] On January 4, 2007, Moore resigned her position, stating that she had been subjected to "extremely unprofessional behavior" "on a daily basis."[8]

Rossi and Stenclick also contend that they were subjected to a sex-based hostile working environment and retaliation. In that regard, they allege that male Sentries directed "hostile and abusive language" toward them, ignored their radio calls, and excluded them from the shared break room. Rossi and Stenclick also believe, like Moore, that the installation of the video camera in the break room was a form of harassment directed at

---

[3] Amended Complaint ¶ 34.

[4] Id. at ¶ 95.

[5] Amended Complaint ¶ 38.

[6] Id.

[7] Id. at ¶ 44.

[8] Id. at ¶ 49.

3

them, since the camera "apparently only operated when . . . [they] were in the break room." Rossi and Stenclick maintain that they complained of harassment to the Sentries' supervisor, Mike Smith ("Smith"), who told them that he would "take care of it," but did not. Instead, they contend that Smith told them that the video camera would be removed from the break room if Rossi and Stenclick would agree to "stay out" of the break room while the male Sentries were taking their breaks. Rossi and Stenclick eventually complained to the school principal Joseph Pustulka ("Pustulka"), who removed the video camera from the break room, handed out copies of the school's anti-harassment policy, and established two separate break rooms, one for the Hall Monitor/aides and one for the Sentries, including Moore. Nevertheless, Rossi and Stenclick maintain that Pustulka's actions in this regard were discriminatory and retaliatory, because he failed to inform them that the video camera was actually fake,[9] and because the break room created for the Hall Monitor/Aides was a "reformed closet." Rossi and Stenclick further allege that they were paid substantially less money than the predominantly male Sentries, event though their job duties were essentially the same.

On November 6, 2006, Plaintiffs commenced the subject action. Their Amended Complaint purports to assert the following causes of action on behalf of each of the three plaintiffs: 1) hostile environment under Title VII; 2) hostile environment under the NYHRL; 3) retaliation under Title VII; 4) retaliation under the NYHRL; and 5) violation of the EPA. On May 25, 2007, Defendant filed the subject motion to strike/dismiss all of the claims in the

---

[9] While it is unclear from the Amended Complaint, it appears that Plaintiffs are alleging that the male Sentries and Supervisors knew that the camera was fake, but did not tell Plaintiffs, and instead told Plaintiffs that the camera was monitoring Plaintiffs' activities.

Amended Complaint except Rossi and Stenclick's EPA claims. Defendant maintains that Moore's EPA claim, as well as all of her factual allegations concerning events prior to May 2005, are barred by the May 16, 2005 Settlement Agreement between Moore and the school district. Defendant also contends that all of Plaintiffs' retaliation and hostile environment claims fail, because Plaintiffs did not suffer an adverse employment action or experience sufficiently severe or pervasive harassment.

On September 13, 2007, counsel for the parties appeared before the undersigned for oral argument of the motions. The Court has considered the parties' written submissions and the arguments of counsel.

DISCUSSION

*The 12(b)(6) Standard*

Recently, the U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, No. 05-1126, — U.S. —, 127 S.Ct. 1955 (May 21, 2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted). See also, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient

5

'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)  When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000).

Additionally, it is clear that "an employment discrimination complaint need not include specific facts establishing a prima facie case of discrimination and instead must contain only a short and plain statement of the claim showing that the pleader is entitled to relief." *Leibowitz v. Cornell University*, 445 F.3d 586, 591 (2d Cir. 2006) (*citing Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508, 122 S.Ct. 992, 995 (2002); internal quotation marks omitted).

### *Title VII and the NYHRL*

Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999)(citations omitted), *abrogated on other grounds, Kessler v. Westchester County Dept. of Social Servs.*, 461 F.3d 199 (2d Cir. 2006).  However, "Title VII does not establish a 'general civility code' for the American workplace.  Simple teasing, offhand comments, or isolated incidents of

offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 223 (2d Cir. 2004) (citation omitted).

It is well settled that "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII." *Torres v. Pisano*, 116 F.3d 625, 629, n.1 (2d Cir. 1997), *cert den*. 522 U.S. 997 (1997). Consequently, unless otherwise noted, references to Title VII below are also intended to refer to the NYHRL.

### *Hostile Environment*

To establish a claim of hostile work environment discrimination, a plaintiff must show that

> the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered. Proving such a claim involves showing both objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.
>
> In addition, the plaintiff must show that a specific basis exists for imputing the objectionable conduct to the employer. Where an employee is the victim of sexual harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action.

*Fairbrother v. Morrison*, 412 F.3d 39, 48-49 (2d Cir. 2005) (citations and internal quotation marks omitted), *abrogated on other grounds, Kessler v. Westchester County Dept. of Social Servs.*, 461 F.3d at 207. Consequently, "when the harassment is attributable to a co-worker, rather than a supervisor . . . the employer will be held liable only for its own negligence."

*Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998).  In this regard, the plaintiff has the burden of proving that

> the company either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.  Under Title VII, an employer need not have actual knowledge of the harassment; an employer is considered to have notice of sexual harassment if the employer-or any of its agents or supervisory employees-knew or should have known of the conduct.  The question of when an official's actual or constructive knowledge will be imputed to the employer is determined by agency principles.  An official's knowledge will be imputed to an employer when: (A) the official is at a sufficiently high level in the company's management hierarchy to qualify as a proxy for the company; or (B) the official is charged with a duty to act on the knowledge and stop the harassment; or (C) the official is charged with a duty to inform the company of the harassment.

*Id.* at 63-64 (citations omitted).

### *Retaliation*

To establish a prima facie case of retaliation under Title VII, "a plaintiff must demonstrate participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (citations and internal quotations omitted).  Making a complaint regarding harassment to one's supervisor is "protected activity" under Title VII. *Id.*

Retaliation claims are analyzed using the three-tier burden-shifting test "set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." *Valentine v.Standard & Poors*, 50 F.Supp.2d 262, 281-82 (S.D.N.Y. 1999)(Citations and internal quotations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001), *cert den.* 534 U.S. 993

(2001). Under the first tier of the *McDonnell Douglas* test, the plaintiff must establish a prima facie case.[10] If the plaintiff establishes a prima facie case,

> the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's discharge [or other adverse employment action]. At this stage, the employer need only articulate--but need not prove-- the existence of a nondiscriminatory reason for its decision. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Once defendant meets its burden of production, the burden shifts back to plaintiff. Under the third tier of the *McDonnell Douglas* test, plaintiff bears the ultimate burden of proving that the reason proffered by the employer is a pretext for unlawful discrimination. In order to survive a motion for summary judgment, plaintiff must establish a genuine issue of material fact as to whether the employer's reason . . . is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision.

*Valentine*, 50 F.Supp.2d at 281-82 (Citations and internal quotations omitted); *see also,* *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003).

At the third tier of the McDonnell Douglas test, simply proving that the employer's proffered reason was false may, or may not, establish the required proof of discriminatory intent:

> The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct. In other words, it is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.

*James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (*quoting Reeves v. Sanderson Plumbing Prods. Inc.*, 120 S.Ct. 2097, 2108-09 (2000)). In this regard, "[t]he

---

[10] It is clear that "the burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion as the prima facie stage is *de minimis*." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (emphasis in original, citation and internal quotation marks omitted).

9

relevant factors . . . include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports or undermines the employer's case." *Id*. (internal quotation marks omitted).

To make a prima facie showing of an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler v. Westchester County Dept. of Social Services*, 461 F.3d at 207 (*citing  Burlington Northern & Santa Fe Railway Co. v. White*, --- U.S. ----, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)).  In this regard, "[w]hether a particular reassignment [or other employment action] is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id*. at 209.

### *Equal Pay Act*

The principles of law generally applicable to claims under the EPA are as follows::

The Equal Pay Act, passed by Congress in 1963, prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). To prove a violation of the EPA, a plaintiff must first establish a prima facie case of discrimination by showing: i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions.

> Under the EPA, proof of the employer's discriminatory intent is not necessary for the plaintiff to prevail on her claim. Thus, a prima facie showing gives rise to a presumption of discrimination.
>
> Once a plaintiff makes out a prima facie case under the EPA, the burden of persuasion shifts to the defendant to show that the wage disparity is justified by one of the affirmative defenses provided under the Act: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). Further, to successfully establish the "factor other than sex" defense, an employer must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential.
>
> Following such proof by the employer, the plaintiff may counter the employer's affirmative defense by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination. The appropriate inquiry to determine if the factor put forward is a pretext, is whether the employer has used the factor reasonably in light of the employer's stated purpose as well as its other practices.

*Belfi v. Prendergast*, 191 F.3d 129, 135 -136 (2d Cir. 1999) (citations and internal quotation marks omitted).

Applying these applicable principles of law, the Court finds that defendant's motion must be denied in its entirety. First, the Court denies Defendant's request to strike those allegations in the Amended Complaint pertaining to matters that were resolved by the May 16, 2005 Settlement Agreement between Moore and defendant. On this point defendant argues that "Moore's claims based on allegations of actions or omissions pre-dating the . . . Settlement Agreement are barred by the Release and claim preclusion." (Def. Memo p. 4) In that regard, defendant cites *Hughes v. The Lillian Goldman Family, LLC*, 153 F.Supp.2d 435, 444-46 (S.D.N.Y. 2001). However, the *Hughes* decision is factually inapposite, since the plaintiff in that case was attempting to re-assert claims that had previously been settled, after the defendant breached the settlement agreement. *Id*. The court in *Hughes* held that

11

the plaintiff could not pursue the settled claims, but could pursue a separate claim for breach of the settlement agreement. *Id*. In the instant case, Moore is not attempting to sue for alleged acts of discrimination that were the subject of the May 16, 2005 Settlement Agreement. Instead, her allegations concerning the alleged pre-May 16, 2005 discrimination provide background information to her retaliation claim. Accordingly, Defendant's motion to strike those portions of the complaint that discuss events pre-dating the settlement agreement is denied.[11][12]

Defendant further contends that Moore's EPA claim is barred by the May 16, 2005 settlement agreement, in which she agreed to a specific hourly wage as part of the settlement agreement.[13] However, Moore did not agree, as part of the May 16, 2005 settlement agreement, to give up her rights to bring a future EPA action, and such an agreement would have been unenforceable in any event. *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 906 (11th Cir. 1987) ("There can be no prospective waiver of an employee's rights under . . . the Fair Labor Standards Act, a portion of which is the Equal Pay Act, because this would nullify the purposes of the statute and thwart the legislative policies it

---

[11]Defendant alternatively argues that Moore's second cause of action must be dismissed, pursuant to New York Human Rights Law § 297(9), "to the extent that it is predicated on acts or omissions pre-dating May 26, 2005." However, as already discussed, plaintiff's current claims are for alleged discrimination that occurred after May 26, 2005. Accordingly, defendant's application in that regard is denied.

[12]During oral argument, defendant's counsel agreed that it was permissible for plaintiff to include the allegations to provide background information.

[13]As support, defendant relies, in part, on *Ledbetter v Goodyear Tire & Rubber Co.*, 127 S.Ct. 2162 (May 29, 2007). This reliance is entirely misplaced, since the *Ledbetter* decision does not address the issue before the Court, but instead, resolves a statute of limitations issue concerning Title VII disparate-treatment pay cases in the wake of *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

was designed to effectuate.") (citations and internal quotation marks omitted). Consequently, defendant's motion to dismiss Moore's EPA claim is denied.

Lastly, Defendant contends that none of the plaintiffs have stated claims of retaliation or hostile environment. Specifically, Defendant maintains that the retaliation claims fail because the alleged acts of retaliation were not materially adverse, and that the hostile environment claims fail because the alleged acts of harassment were not sufficiently severe or pervasive. Alternatively, Defendant contends that Plaintiffs' allegations are too conclusory. However, the Court disagrees with Defendant and finds that Plaintiffs' allegations are sufficient to survive a Rule 12(b)(6) motion.

## CONCLUSION

For all of the foregoing reasons, defendant's application [#24] is denied in its entirety.

SO ORDERED.

Dated:   September 17, 2007
         Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge